**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **KENNEDY LEGEL,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-CV-0224** |
| | § | |
| **TRANS UNION, LLC, EXPERIAN** | § | |
| **INFORMATION SOLUTIONS, INC.,** | § | |
| **EQUIFAX INFORMATION SERVICES,** | § | |
| **LLC, and LJ ROSS & ASSOCIATES,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
OPPOSED MOTION TO STRIKE OR EXCLUDE
<u>EXPERT TESTIMONY OF DOUGLAS HOLLON</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD..................................................................................................... 2

DISCUSSION ................................................................................................................. 3

    I.      Mr. Hollon Is Not Qualified to Testify Regarding Damages................................ 3

    II.     Mr. Hollon Offers Unhelpful, Wrong, and Legal Conclusions. ........................... 5

    III.    Mr. Hollon Has No Methodology to Speak of...................................................... 10

CONCLUSION............................................................................................................... 14

## TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. Experian Info. Solutions, Inc.*,
No. 15-CV-11394, 2016 WL 2043200 (E.D. Mich. May 10, 2016) ........................................8

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) .................................................................................................5

*Bagby v. Experian Info. Sols., Inc.*,
162 F. App'x 600 (7th Cir. 2006) ..........................................................................................8

*Barron v. Equifax Info. Servs., L.L.C.*,
802 F. App'x 161 (5th Cir. 2020) ..........................................................................................8

*Bourjaily v. United States*,
483 U.S. 171 (1987).................................................................................................................2

*Brown v. Illinois Cent. R. Co.*,
705 F.3d 531 (5th Cir. 2013) ...............................................................................................10

*Cameron v. Greater New Orleans Fed. Credit Union*,
No. 16-8514 ...........................................................................................................................8

*Carr v. Montgomery Cnty.*,
Tex., No. 13-CV-02795-H, 2015 WL 5838862 (S.D. Tex. Oct. 7, 2015)................................5

*Cartwright v. Am. Honda Motor Co.*,
No. 9:09-CV-00205, 2011 WL 3648565 (E.D. Tex. Aug. 15, 2011) (Guthrie,
M.J.) ....................................................................................................................................2, 5

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 590 (1993).............................................................................................................2, 3

*Davis v. Equifax Info. Servs. LLC*,
346 F. Supp. 2d 1164 (N.D. Ala. 2004)...................................................................................8

*Delgado v. Experian Info. Sols., Inc.*,
No. 4:24-CV-00637-ALM (June 20, 2025) ...........................................................................13

*Dickens v. Trans Union Corp.*,
    18 F. App'x 315 (6th Cir. 2001) ..............................................................................8

*Fried v. Experian Information Solutions, Inc.*,
    No. 14-12865, 2015 WL 5591117 (E.D. Mich. Sept. 25, 2015)..................................8

*Garrett v. Experian Info. Sols., Inc.*,
    No. 11-12523, 2012 WL 1931324 (E.D. Mich. May 29, 2012) ..................................8

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..................................................................................................3

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009) ..................................................................................8

*Green v. Experian Info. Solutions, Inc.*,
    No. 3:13-cv-04134-B (N.D. Tex. Mar. 20, 2015)........................................................8

*Jianqing Wu v. Trans Union*,
    No. CIVA AW-03-1290, 2006 WL 4729755 (D. Md. May 2, 2006), *aff'd sub
    nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007)..............................8

*Johns v. Nelnet*,
    No. 22-CV-04791, 2026 WL 914621 (E.D. Pa. Mar. 31, 2026)...................... passim

*Knight v. Kirby Inland Marine Inc.*,
    482 F.3d 347 (5th Cir. 2007) ....................................................................................2

*Lee v. Experian Info. Solutions*,
    No. 02 C 8424, 2003 WL 22287351 (N.D. Ill. Oct. 2, 2003) .................................8, 9

*Little v. Tech. Specialty Prods., LLC*,
    940 F. Supp. 2d 460 (E.D. Tex. 2013) (Mazzant, J.)..................................................5

*Lloyd v. FedLoan Servicing*,
    105 F.4th 1020 (8th Cir. 2024) ..................................................................................8

*Mathis v. Exxon Corp.*,
    302 F.3d 448 (5th Cir. 2002) ....................................................................................2

*McCelland v. Experian Info. Sols., Inc.*,
    No. 04 C 5686, 2006 WL 2191973 (N.D. Ill. July 28, 2006) .....................................8

-iii-

*McCoy v. SC Tiger Manor, LLC*,
No. CV 19-723-JWD-SDJ, 2022 WL 621000 (M.D. La. Feb. 11, 2022)................................8

*McNabney v. Lab'y Corp. of Am.*,
153 F. App'x 293 (5th Cir. 2005) (per curiam) ........................................................11

*Morris v. Trans Union LLC*,
420 F. Supp. 2d 733 (S.D. Tex. 2006), aff'd, 224 F. App'x 415 (5th Cir. 2007).....................8

*Najera v. Experian Info. Sols., Inc.*,
No. 4:25-CV-00443-P (N.D. Tex. January 6, 2026)....................................................7

*Nelson v. Experian Info. Sols., Inc.*,
No. 2:23-CV-01634-RMG, 2024 WL 3219180...............................................1, 5, 13

*Okocha v. Trans Union LLC*,
No. 08-CV-3107, 2011 WL 2837594 (E.D.N.Y. Mar. 31, 2015).............................................8

*Pagazani v. Equifax Info. Servs. LLC*,
No. 15-CV-61467, 2016 WL 2997586 (S.D. Fla. May 25, 2016).............................................8

*Perry v. Experian Info. Solutions, Inc.*,
No. CIV.A. 05 C 1578, 2005 WL 2861078 (N.D. Ill. Oct. 28, 2005) ......................................8

*Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*,
No. 12-CV-00888-H, 2019 WL 13060286 (S.D. Tex. Dec. 10, 2019) (Hittner,
J.)...................................................................................................................................2

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) ...................................................................................2

*Quinn v. Experian Solution*,
No. 02 C 5908, 2004 WL 609357 (N.D. Ill. Mar. 24, 2004) ......................................8

*Ramirez v. Experian Info. Sols., Inc.*,
No. 4:25-CV-00443-P, 2026 WL 833868 (N.D. Tex. Mar. 26, 2026), appeal
pending........................................................................................................................8

*Renfroe v. Parker*,
974 F.3d 594 (5th Cir. 2020) ...................................................................................5

*Ruffin-Thompkins v. Experian Info. Sys., Inc.*,
No. 03 C 683, 2003 WL 25719228 (N.D. Ill. Dec. 31, 2003), *aff'd sub nom.*
*Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603 (7th Cir. 2005).........................8

*Seaman v. Seacor Marine LLC*,
   326 F. App'x 721 (5th Cir. 2009) (per curiam) ........................................................................2

*Serfess v. Equifax Credit Info. Servs.*,
   No. CIV. 13-406 ........................................................................................................................8

*United States v. Hicks*,
   389 F.3d 514 (5th Cir. 2004) ....................................................................................................2

*Vargas v. Lee*,
   317 F.3d 498 (5th Cir. 2003) ....................................................................................................2

*Watkins v. Experian Info., Sols., Inc.*,
   No. 6:13-CV-00239-WSS-JCM, 2014 WL 12879669 (W.D. Tex. Sept. 8, 2014) ........................................................................................................................................8

**STATUTES**

15 U.S.C. § 1681i.............................................................................................................1, 6, 7

Fair Credit Reporting Act (FCRA) ....................................................................................1, 6, 7, 9

**RULES**

Fed. R. Civ. P. 26(a)(2)(B)(i)...........................................................................................5

Federal Rule of Evidence 702:.................................................................................2, 3, 4, 5

**INTRODUCTION**

This Court should join the growing number of courts who have excluded or limited Mr. Douglas Hollon's opinion. *See* Ex. A at 15 (Transcript of January 22, 2026 Deposition of Douglas Hollon, or "Hollon Tr." at 46:13-16) ("half a dozen" times); *see, e.g., Johns v. Nelnet*, No. 22-CV-04791, 2026 WL 914621, at *13–17 (E.D. Pa. Mar. 31, 2026) (excluding in full); *Nelson v. Experian Info. Sols., Inc.*, No. 2:23-CV-01634-RMG, 2024 WL 3219180 (excluding in part). Mr. Hollon, who left Defendant Experian Information Solutions, Inc. ("Experian")'s employment six years ago following a demotion, opines that conducting a Fair Credit Reporting Act (FCRA) reinvestigation in-line with Fifth Circuit law is unreasonable. Rather than employing the industry-standard Automated Consumer Dispute Verification form (ACDV) to communicate with credit furnishers, Mr. Hollon intends to opine that Experian was required to marshal its own police force akin to that of a U.S. Army Criminal Investigation Division (CID) investigation, that Experian accordingly failed to conduct *any* reinvestigation altogether under 15 U.S.C. § 1681i, and, in contrast to Fifth Circuit precedent, that a Consumer Report Agency (CRA)'s use of only an ACDV to communicate with credit furnishers in conducting a § 1681i investigation is unreasonable. Not only is that all wrong, legal opinion, but it is almost the entirety of what Mr. Hollon offers.

What remains fares no better. Mr. Hollon opines that Experian caused Plaintiff Kennedy Legel ("Plaintiff") emotional and economic damage despite having no qualifications to draw those legal conclusions, and based primarily on his conversations with Plaintiff's counsel. He also concludes that Experian received Plaintiff's third dispute letter based on, again, conversations with Plaintiff's counsel, plus Experian's alleged "history" of not scanning some mail (even though it had changed that policy). Lastly, Mr. Hollon concludes that Experian could have hired more dispute agents based on a questionable financial analysis of Experian's parent company's profits

without taking into account any other financial considerations.  This Court should again strike his opinion in full.

## LEGAL STANDARD

Plaintiff must prove by a preponderance of the evidence that Mr. Hollon's opinion satisfies all three facets of Federal Rule of Evidence 702:  (1) he must be qualified; (2) his testimony must be helpful to the jury; and (3) his testimony must be reliable.  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)).  The Supreme Court has charged trial courts with the responsibility of acting as "gate-keepers" to exclude expert testimony that does not satisfy the requirements of Rule 702.  *See Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 243–44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm*., 509 U.S. 579 (1993)); *Vargas v. Lee*, 317 F.3d 498, 500 (5th Cir. 2003); Fed. R. Evid. 702 Advisory Committee's note to 2023 amendment.  The first prong requires an expert to be qualified to opine on a matter by virtue of their "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702; *see Daubert*, 509 U.S. at 590; *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004).  The second prong, helpfulness to the fact finder, requires that the testimony assist the jury in determining a fact issue.  Fed. R. Evid. 702; *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.,* No. 12-CV-00888-H, 2019 WL 13060286, at *4 (S.D. Tex. Dec. 10, 2019) (Hittner, J.).  To be helpful, the testimony must be relevant to the fact issues and not merely concern matters within the everyday knowledge or experience of a lay juror.  *Daubert*, 590 U.S. at 591; *Cartwright v. Am. Honda Motor Co*., No. 9:09-CV-00205, 2011 WL 3648565, at *1 (E.D. Tex. Aug. 15, 2011) (Guthrie, M.J.).  The third prong requires the testimony to reliably apply principles and methods to the facts of the case.  Fed. R. Evid. 702.  "The reliability analysis applies to all aspects of an expert's testimony," including the facts underlying the expert's opinion and the link between the facts and the conclusion.  *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 355 (5th Cir. 2007); *see also Seaman v. Seacor Marine*

2

*LLC*, 326 F. App'x 721, 725 (5th Cir. 2009) (per curiam).  Courts have been crystal clear about what does not qualify as a reliable principle or method, as "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## DISCUSSION

This Court should strike Mr. Hollon's opinion in full, or in the alternative, as to (a) damages typically suffered by consumers, (b) Plaintiff's alleged emotional damages, (c) Plaintiff's alleged economic damages, (d) Mr. Hollon's opinion that a CRA's reinvestigation must be CID-like, (e) his opinion that Experian failed to conduct any reinvestigation at all, (f) his opinion that ACDVs are unreasonable, (g) all other legal conclusions, (h) his opinion that Experian received Plaintiff's third dispute letter, and (i) his opinion as to Experian's financial ability to hire dispute agents.

## I.     Mr. Hollon Is Not Qualified to Testify Regarding Damages.

This Court must look to Mr. Hollon's experience to determine whether he possesses specialized knowledge.  "Knowledge" under Rule 702 "connotes more than subjective belief or unsupported speculation."  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 590 (1993).

Mr. Hollon is not qualified to testify regarding damages.[1]  His only conceivable qualification as to Plaintiff's emotional damages is that he recalls listening to "anguish[ed]" consumers.  Ex. B at 12 (Hollon Report at 11).  That has no bearing on his ability to determine if

---

[1] *See, e.g.,* Ex. B at 4–5 (October 21, 2025 Expert Report of Mr. Hollon, or "Hollon Report") at 3–4, ("[A]nother purpose of my specialized knowledge, skills, experiences, training, education, plus methodology, is to help with the trier of fact of damages incurred by Plaintiff regarding creditworthiness and/or character attributable to Defendant's actions/inactions with the reporting of information."), 4 ("In my opinion, Experian's failure to have adequate procedures to assure accuracy and adequately reinvestigate Plaintiff's disputes resulted in inaccurate, damaging information remaining in Plaintiff's Experian file."), 57 (" . . . Mr. Legel's credit scores were affected by the LJ Ross account, which in turn affected his ability to refinance his mortgage at the time."); Ex. A at 27–29, 37–38, 40 (Hollon Tr. at 77:22-24 ("[B]ased on the information that was reported by Experian, this affected Dr. Legel's refinance for his mortgage."), 84:8-85:17 ("[M]y understanding from the evidence in this case is that his mortgage refinance was affected based on the inaccurate reporting. . . .  [T]he percentage rate was affected."), 127:8-13 (testifying that Experian caused Plaintiff's score drop), 130:2-5 (same), 135:7-17 (same)).

3

*this* plaintiff suffered such damages. *See* Ex. A at 4, 16 (Hollon Tr. at 18:6-7, 58:17-24) (admitting they never spoke). Regardless, Mr. Hollon is not a psychologist, and his resume shows that he does not have experience related to emotional damages. *See* Ex. B at 74–75 (Hollon Report at 73–74), *generally*; *see* Ex. C at 18 (Transcript of November 19, 2025 Deposition of Mr. Hollon in Victor Manuel Ramirez Najera matter, or "Najera Tr." at 66:15-17) ("Q. Do you have any medical, mental health, or psychiatric related training? A. No."). That is not the specialized knowledge required for admissibility under Rule 702.

Mr. Hollon's opinions regarding Plaintiff's alleged credit applications are also inadmissible. He admits that he has no specialized expertise in credit granting decisions. *See id*. at 65:7-11 ("Q. You've never been responsible for determining whether to grant a consumer credit, correct? A. Not yet."); Ex. A at 74 (Hollon Tr. at 230:17-23). To the extent that he speculates, he lacks the relevant background. For example, Mr. Hollon does not know how the FICO score algorithm works and did not use the FICO score estimator while at Experian or in connection with this case. *Id*. at 28:9-10, 130:9-11, 133:12-14; *see* Ex. F at 12 (Delgado Tr. at 202:6-8) ("Q. Can you tell me about the underlying algorithm for just one of those [FICO score] variations? You can choose which one. A. At this time, I could not."); instead, his knowledge about credit scores and credit granting is based on his own credit history.[2] Further, the conclusion that Experian caused Plaintiff damage cannot follow unless there is a record of the underlying damages. Mr. Hollon provides no actual information about how Experian harmed Plaintiff (*e.g.*, monetary or psychological harm). *See* Ex. A at 37, 40 (Hollon Tr. at 127:8-25 (unable to tell if Plaintiff would

---

[2] *See* Ex. C at 25–26 (Najera Tr. at 138:25-139:13) ("Back in the 90s, I declared bankruptcy, okay. Got custody of my kids, my ex-wife maxed out all my accounts, and so I ended up doing that. But what happened was when I went to go get a car loan, the APR at that time was like -- well, the finance guy put me in for like 17 percent. The bank came back and said, no, we're going to do it like at 14 percent. But still, that fact that -- think about that, just that 3 percent that that finance guy was going to extend to get. So if a person is applying for credit, if they've got a score that may be considered not that great, that lender, if they're willing to take the risk, they can stand to get some money up front like a down payment or a higher interest rate where they can . . . recoup their money faster.").

have received the same interest rate if not for the collection account), 135:18-21 (unable to tell if anything else changed in Plaintiff's credit reports other than the collection account)).  Nor does Mr. Hollon cite to any studies or data that relate to how Experian's reporting could have harmed Plaintiff.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons for them").

For these very reasons, Mr. Hollon's opinion on damages has been excluded before.  *See, e.g., Johns v. Nelnet*, No. 22-CV-04791, 2026 WL 914621, at *15, 17 (E.D. Pa. Mar. 31, 2026) (excluding his opinion as to that plaintiff's damages, and even his opinion regarding damages typically suffered by consumers because "[t]he jury will consider documentary evidence and testimony from Johns regarding damages.  Generalized statements from Hollon regarding the harm other consumers have faced when their consumer reports contained inaccuracies is not relevant to the present case."); *Nelson v. Experian Info. Sols., Inc.*, 2024 WL 3219180, at *3 (D.S.C. June 27, 2024) (excluding Mr. Hollon's opinions regarding plaintiff's emotional damages because "he is not qualified to proffer such opinions," and economic damages since "Plaintiff can speak to his own damages and Hollon's recitation of Plaintiff's damages is unhelpful").

## II.       Mr. Hollon Offers Unhelpful, Wrong, and Legal Conclusions.

Mr. Hollon's purported helpfulness to the trier of fact is the "touchstone" for admissibility under Rule 702.  *Cartwright v. Am. Honda Motor Co.*, No. 9:09-CV-00205, 2011 WL 3648565, at *1 (E.D. Tex. Aug. 15, 2011) (Guthrie, M.J.).  The Fifth Circuit has expressly held that expert testimony on legal conclusions and formulations of law are unhelpful.  *See Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020); *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467–68 (E.D. Tex. 2013) (Mazzant, J.); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *Carr v. Montgomery Cnty.*, Tex., No. 13-CV-02795-H, 2015 WL 5838862, at *8 (S.D. Tex. Oct. 7, 2015).

Mr. Hollon plans to tell the jury that a CRA's investigation should be equivalent to that of the Army's CID.  *See* Ex. B at 14 (Hollon Report at 13); Ex. A at 5–6, 8–11, 26, 29–30, 34, 35, 42–51, 78–79 (Hollon Tr. at 19:17-20:1, 30:2-33:18 ("I remember when I received my first copy of the Fair Credit Reporting Act when I was at Experian. . . .  I said, . . . I don't see that we investigate.  I worked as a criminal investigator in the Army, and I'm trying to figure out, when do we investigate? . . .  We're not investigating. . . .  We're not interviewing anybody.  We're not collecting or gathering any kind of documentation or evidence and analyzing it."), 75:5-15, 85:21-86:12, 116:2-11, 119:10-12, 151:6-13, 155:25-163:13, 250:2-9, 261:9-13 (all regarding CID investigatory techniques)).  Another court has excluded his opinion in full for that very reason— because that is his entire theory of 15 U.S.C. § 1681i:

> [] Hollon relies directly on his investigative experience at CID without any explanation for how this experience supports his conclusions in the consumer reporting industry. . . .  Further, Equifax and TransUnion do specify clear distinctions between the investigations and reinvestigations that CRAs and furnishers undertake when receiving disputes in contrast with CID investigations. When Hollon conducted CID investigations, he had subpoena and search warrant power through the assistance of JAG officers, and the ability to place someone under arrest.  Moreover, he had no time constraint on the investigation, but rather would exhaust his leads and go as far as he can.  CRAs and furnishers, however, have limited time periods as defined under the FCRA to investigate a dispute. Moreover, what determines a reasonable investigation for CRAs and furnishers is based in part on the amount of information received in a dispute—a "boil the ocean" mentality of conducting an investigation for as long as it takes, serving subpoenas, and conducting searches pursuant to warrants, is not only unavailable for CRAs and furnishers, it is clearly beyond what the FCRA contemplated.

*Johns*, 2026 WL 914621, at *16 (cleaned up).

It doesn't end there.  In Mr. Hollon's view, Experian does not have "reasonable" or "adequate" reinvestigation procedures, *see infra* at 9 n.5 (collecting legal conclusions), so he plans to tell the jury that because those reinvestigations are not like "[w]hen [he] was an investigator in the Army," Ex. C at 20 (Najera Tr. at 111:4-10), working "a cold case," *id*. at 111:11-17, or

6

investigating "a crime scene," Ex. B at 14, 67 (Hollon Report at 13, 66); Ex. A at 36 (Hollon Tr. at 120:15-21), they are not "true investigations," *e.g.,* Ex. B at 14–15, 17–18, 31, 33 (Hollon Report at 13–14, 16–17, 30, 32), so *Experian did not conduct reinvestigations altogether*—even where Experian processed Plaintiff's disputes and sent ACDVs to the credit furnishers.[3]  To be clear, Experian does reinvestigate consumer disputes, and it reinvestigated Plaintiff's first two disputes here.  Whether or not Mr. Hollon believes those reinvestigations were "reasonable" or "adequate" is another question.  But he has staunchly maintained here and in other cases that he will tell the jury that Experian did not conduct an investigation or reinvestigation altogether under 15 U.S.C. § 1681i.  *See* ECF 126 at 7, 24 (Experian's Mot. to Strike at 1, 18), *Najera v. Experian Info. Sols., Inc.*, No. 4:25-CV-00443-P (N.D. Tex. January 6, 2026).

Further, Mr. Hollon plans to tell the jury that CRAs violate § 1681i by using only ACDVs to reinvestigate consumers' disputes, which is wrong as a matter of law.  *See, e.g.,* Ex. B at 14, 30–33, 67 (Hollon Report at 13, 29–32, 66); Ex. A at 13, 55–57 (Hollon Tr. at 37:17-19, 179:12-14, 179:22-24, 180:4-5, 204:8-11); *supra* at 7 n.3 (collecting opinion regarding Experian not reinvestigating); *infra* at 9 n.5 (collecting legal conclusions).  Not only is that a legal conclusion, but it is directly contradicted by extensive case law, including from the Fifth Circuit, where courts

---

[3] *See, e.g.,* Ex. B at 30, 32 (Hollon Report at 29 ("Considering this evidence, along with my experience and knowledge, it is my opinion, no one at Experian performed a reinvestigation of Plaintiff's disputes. . . .  Experian stated it does not conduct investigations . . . ."), 31 (same)); Ex. A at 12, 18–20, 22, 25, 30, 41–42, 52, 57 (Hollon Tr. at 62:12-63:1 ("Q.  And which procedures or policies did you find to be inadequate in this case? . . . A.  [T]here was no investigation."), 64:13-19 ("[T]here was no investigation.  The FCRA states that there must be an investigation.  I didn't see an investigation.  I saw that the ACDV exchange was used, so that wasn't an investigation."), 64:20-23 ("[B]ased on reading the evidence in this case, I didn't see where an investigation took place."), 67:15-21 ("Well, there was no investigation.  So, you know, the -- we talked earlier, the FCRA talks about there needs to be an investigation that takes place. . . .  [T]he evidence didn't show that an investigation took place.  It was simply the ACDV exchange."), 74:12-23 ("[T]he only thing that I can see that Experian did was send ACDVs.  It did not investigate. . . .  Did they investigate?  Not according to the evidence."), 86:13-23 ("The facts in this case are, you know, there's no record that an investigation did take place . . . ."), 34:15-17, 86:24-25, 140:10-12, 151:1-2, 164:2-3, 204:8-11 (all similar)).

have held that CRAs' use of ACDVs was reasonable as a matter of law.[4]  Here, the facts are not in dispute regarding what happened with Experian's ACDVs.  Experian sent an ACDV to LJ Ross after Plaintiff's first two disputes with his dispute materials attached, and it did not send one after his third because there is no evidence that Experian ever received Plaintiff's dispute letter.  Doc. 95, Mot., 1–6; Doc. 103, Reply, 2–3.  The only information that Mr. Hollon adds is that in his opinion, those procedures were unreasonable.

Lastly, Mr. Hollon unhelpfully provides a plethora of other legal conclusions:

---

[4] *See, e.g., Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161, 163 (5th Cir. 2020) ("We agree with the district court that Barron has offered no reasonable factual basis for finding the defendants should have been on notice of a need to go beyond the ACDV system as to this dispute.") (citing *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 754 (S.D. Tex. 2006), aff'd, 224 F. App'x 415 (5th Cir. 2007)); *Ramirez v. Experian Info. Sols., Inc.*, No. 4:25-CV-00443-P, 2026 WL 833868, at *8 (N.D. Tex. Mar. 26, 2026), appeal pending, 5th Cir. ("The Fifth Circuit has held that the use of automated consumer dispute verifications ('ACDV') to reinvestigate consumer disputes is a reasonable method of investigation.") (citing *Barron*, 802 F. App'x 161 at 162); *McCoy v. SC Tiger Manor, LLC*, No. CV 19-723-JWD-SDJ, 2022 WL 621000, at *8 (M.D. La. Feb. 11, 2022), *report and recommendation adopted*, No. CV 19-723-JWD-SDJ, 2022 WL 619966 (M.D. La. Mar. 2, 2022) ("'The use of an ACDV form is an accepted method of communicating the details of a consumer dispute.'") (quoting *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 754 (S.D. Tex. 2006) and citing *Cameron v. Greater New Orleans Fed. Credit Union*, No. 16-8514 c/w 16-12676, 2017 WL 3064967, at *3 (E.D. La. July 19, 2017) for the proposition that an " . . . ACDV sent to the data furnisher, without the plaintiff's dispute letters, was sufficient to notify the data furnisher of the nature of the dispute"); *Watkins v. Experian Info., Sols., Inc.*, No. 6:13-CV-00239-WSS-JCM, 2014 WL 12879669, at *9 (W.D. Tex. Sept. 8, 2014), *report and recommendation adopted*, No. W-13-CV-239, 2014 WL 12879668 (W.D. Tex. Oct. 3, 2014) ("[I]t was reasonable for Experian to rely on the ACDVs provided to it by the data furnishers"); *Green v. Experian Info. Solutions, Inc.*, No. 3:13-cv-04134-B (N.D. Tex. Mar. 20, 2015) (ECF No. 92 at 23); *Lloyd v. FedLoan Servicing*, 105 F.4th 1020, 1025 (8th Cir. 2024); *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 607 (7th Cir. 2006); *Garrett v. Experian Info. Sols., Inc.*, No. 11-12523, 2012 WL 1931324, at *6 (E.D. Mich. May 29, 2012); *McCelland v. Experian Info. Sols., Inc.*, No. 04 C 5686, 2006 WL 2191973, at *6 (N.D. Ill. July 28, 2006); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009); *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 319 (6th Cir. 2001); *Pagazani v. Equifax Info. Servs. LLC*, No. 15-CV-61467, 2016 WL 2997586, at *6 (S.D. Fla. May 25, 2016); *Allen v. Experian Info. Solutions, Inc.*, No. 15-CV-11394, 2016 WL 2043200, at *3-4 (E.D. Mich. May 10, 2016); *Fried v. Experian Information Solutions, Inc.*, No. 14-12865, 2015 WL 5591117, at *2 (E.D. Mich. Sept. 25, 2015); *Okocha v. Trans Union LLC*, No. 08-CV-3107, 2011 WL 2837594, at *7 (E.D.N.Y. Mar. 31, 2015); *Serfess v. Equifax Credit Info. Servs.*, No. CIV. 13-406 RBK/JS, 2014 WL 4272032, at *7 (D.N.J. Aug. 28, 2014); *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *7 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007); *Perry v. Experian Info. Solutions, Inc.*, No. CIV.A. 05 C 1578, 2005 WL 2861078, at *7-8 (N.D. Ill. Oct. 28, 2005); *Davis v. Equifax Info. Servs. LLC*, 346 F. Supp. 2d 1164, 1175-76 (N.D. Ala. 2004); *Quinn v. Experian Solution*, No. 02 C 5908, 2004 WL 609357, at *6 (N.D. Ill. Mar. 24, 2004); *Ruffin-Thompkins v. Experian Info. Sys., Inc.*, No. 03 C 683, 2003 WL 25719228, at *4 (N.D. Ill. Dec. 31, 2003), *aff'd sub nom. Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603 (7th Cir. 2005); *Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 WL 22287351, at *6 (N.D. Ill. Oct. 2, 2003).

**SUMMARY OF OPINIONS**

Experian

In my opinion, Experian failed to follow adequate procedures to ensure accuracy.

In my opinion, Experian failed to conduct adequate reinvestigations into Plaintiff's disputes.

In my opinion, Experian failed to review and/or consider the information that Plaintiff provided to Experian.

In my opinion, Experian released inaccurate and damaging consumer reports, pertaining to Plaintiff, to third-parties.

In my opinion, Experian's failure to have adequate procedures to assure accuracy and adequately reinvestigate Plaintiff's disputes resulted in inaccurate, damaging information remaining in Plaintiff's Experian file. If Experian had adequate procedures to assure accuracy and conducted adequate reinvestigations, it would have deleted the inaccurate information from Plaintiff's file. Because it did not, when Experian sent reports about Plaintiff to third party users, the reports falsely indicated that Plaintiff had information which was inaccurate / fraudulent.

Ex. B at 5 (Hollon Report at 4).[5] He also wrongly opines that the FCRA is a strict liability statute. *See* Ex. A at 19–21 (Hollon Tr. at 63:14-65:11) ("Q. How do you determine whether the procedures that you've read are adequate or not? A. Based on the outcome of what happened . . . . [T]he procedures were not adequate because the inaccuracy continued to be reported on his report.").

---

[5] *See also, e.g., id.* at 10 (Experian did not "adequately investigate."), 15 ("[T]he entire system may constitute an inadequate procedure in violation of the FCRA."), 29 ("no indication that Experian reasonably reinvestigated"), 31 (same), 30 (" . . . Experian did not conduct a true investigation (much less a reasonable one)."), 32 (same), 51 ("did not even conduct an adequate reinvestigation"), 63 ("without any sort of adequate verification process for accuracy"), 66 ("failed to maintain adequate procedures to ensure accuracy" "failed to reasonably investigate" "didn't conduct an adequate investigation"); Ex. A at 2–3, 17–18, 23–25, 57, 76–77 (Hollon Tr. at 8:16-9:10 ("I primarily deal with reasonable -- reasonableness and accuracy . . . . Primarily, my scope is to go through the, you know, documents and my area of expertise is reasonable – reasonableness and accuracy, and that's my scope."), 61:11-62:1 ("So far, as far as adequate procedures, I didn't see adequate procedures to ensure accuracy . . . . I don't recall reading that the procedures were adequate to ensure accuracy. Q. Does adequate mean something different than reasonable, in your view? A. Well, I'm not -- reasonable is a word that is used in the legal, and I -- so I don't -- you know, reasonable is, like, fair or -- reasonable is fair, sensible, but . . . along that same context. . . . Because adequate talks about quality and quantity and not being sufficient or is it sufficient, so that would – that's why I use that word."), 69:24-70:1 ("You're saying the reinvestigations into each of those were, in your opinion, inadequate? A. Oh, yeah."), 74:1-4 ("Again, 'reasonable' is a legal term. I'm not an attorney. I'm not here to discuss legal opinion, so I use 'adequate' instead of 'reasonable.'"), 204:8-11 ("did not conduct an adequate investigation"), 246:15-24 ("Q. I want to talk about what -- the term that you've used throughout today and in your report as well, which is 'adequate investigation.' Where does that standard come from? A. Well, okay. I don't use the standard 'reasonable' because that's a legal term, so I use 'adequate.' And adequate, again, is talking about, you know, quality and quantity, and it -- but it also talks about, you know, was it fair and sensible, and what would a normal person expect?"), 249:3-5 ("[W]ith all due respect to courts, courts don't want me to say reasonable, so I don't say reasonable.")); *supra* at 3 n.1 (collecting legal conclusions as to alleged damages).

### III.    Mr. Hollon Has No Methodology to Speak of.

Mr. Hollon's report rests on pure *ipse dixit* and fails to outline any "reliable principles or methods."  It does have a section titled "QUALIFICATIONS AND METHODOLOGY" that recounts Mr. Hollon's employment, training, and background.  *See* Ex. B at 3–5 (Hollon Report at 2–4).  But, again, that is a red herring:  there is no methodology explained in that section (despite the optimistic header) or anywhere else.  The Fifth Circuit "ha[s] long held that without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536–37 (5th Cir. 2013) (cleaned up) ("Apparently recognizing the lack of objective support for his findings, Long emphasized his own education and experience . . . .  Long's analysis is transparently subjective and the district court did not abuse its discretion by excluding his testimony.").

The "factual" support for Mr. Hollon's opinions, instead of being based on studies and analyses, is simply conjecture based on his alleged subjective experiences and inadmissible hearsay from years prior to any relevant facts.  *See Johns*, 2026 WL 914621, at *15 ("[A]n expert's experience with no explanation for how that experience supports their conclusion cannot be a substitute for reliable principles or methods.  Hollon repeatedly states that his opinions are based on his 'experience, skills, and knowledge,' with no explanation for *what* in his experience, skills, or knowledge draws upon in reaching that conclusion.  An expert cannot be reliable when relying solely on the *ipse dixit* of the expert.") (citations omitted and emphasis in original).  Here, Mr. Hollon refers to his experience, skills, knowledge, and training over sixty times in his expert report, and his expert "opinion" almost eighty times, not to mention countless times in his deposition.  But none of that points to a reliable methodology.

Mr. Hollon also plans to tell the jury that Experian conclusively received Plaintiff's third dispute letter and dispute package, even though there is no evidence that they were inside the

10

envelope that Experian received (Experian's policy in effect then was to scan all envelope contents).[6] He fails to consider alternative explanations why Experian received the envelope, like that nothing was inside. *See McNabney v. Lab'y Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005) (per curiam) (An expert's failure to consider alternative causes "renders his opinion little more than speculation.") (citation omitted). His opinion is based on his experience at Experian, which was before it changed its policy and started scanning all envelope contents, *see* Ex. B at 39–40 (Hollon Report at 38–39); Ex. A at 62, 64 (Hollon Tr. at 213:7-18, 215:6-216:3), and on conversations with Plaintiff's counsel. *See id*. at 222:3-13 (Experian received the letter "based on the discussions with the retaining counsel that this information was sent to Experian, and there's receipts to show that Experian received [the envelope]. Q. If you hadn't spoken with retaining counsel, do you think you'd believe that Dispute 3 was in that package? A. That's a hypothetical. I don't know. I couldn't tell you what I would believe."); *see Johns*, 2026 WL 914621, at *17 (Hollon's opinions are rendered more unreliable because they do not dependably flow from the facts. He asserts . . . she was a victim of identity theft. That is my opinion. . . . But the alleged identity theft in this case is not so clearly established. Rather, it is only Johns's testimony and the police report—based on her statement, which does not specify which tradelines she asserts are the result of identity theft—which support this conclusion. It is the province of the jury, not an expert, to make credibility determinations.") (internal quotation marks omitted).

---

[6] *See* Ex. B at 47 (Hollon Report at 46 (claiming that Experian destroyed the dispute package without scanning), 47 ("In my opinion, there is no doubt that Experian made a business decision not to process Plaintiff's dispute package.")); Ex. A at 58–61, 63, 66, 68 (Hollon Tr. at 221:2-5 (testifying that Experian received Plaintiff's dispute package "according to the evidence"), 221:15-16 (same), 221:6-13 (testifying Experian received the dispute package), 214:8-17 (same), 223:7-25 (testifying that it is his "expert opinion" based on "the evidence" that Experian received Plaintiff's dispute package "[b]ased on Experian's history of not scanning and destroying mail"), 207:9-208:3 (same), 209:5-23 (same), 210:12-24 (same)); Ex. B at 33–35 (Hollon Report at 32–34) (same).

Mr. Hollon also bases his opinion that Experian caused Plaintiff's alleged damages based on, again, conversations with Plaintiff's counsel, and simply because an inaccuracy occurred.[7]

Lastly, Mr. Hollon's opinion that Experian could have hired more dispute agents, *see, e.g.,* Ex. A at 53, 69 (Hollon Tr.) at 167:14-17, 224:10-16, is based on unreliable methodology. He performed a Google search to compare Experian's parent company's "Total Revenue 2022 – 6,288 millions," "Profit 2022 – 1,167 millions," "Total Revenue 2021 – 5,372 millions," and "Profit 2021 – 802 millions," Ex. B at 53 (Hollon Report at 52), with "Median Hourly Wages" of "Credit Authorizers, Checkers, and Clerks," "Customer Service Representatives," and "Information and Record Clerks" in "Los-Angeles-Long Beach-Anaheim, CA," *id*. at 54–55, to conclude that "[b]ased upon the above analysis, it is my opinion that Experian had sufficient profits to hire up to or between roughly 15,000 and 25,000 Dispute Processing Agents during the period of 2021 – 2022." *Id*. at 56. Apparently, this conclusion was also based on his personal experience.[8] But

---

[7] *See* Ex. A at 28–29, 32–33 (Hollon Tr. at 84:8-85:17 ("Q. How did you conclude that the alleged inaccuracy caused damage to Plaintiff? A. It was based on my conversations with retaining counsel. Q. So Mr. McCarty told you facts that led you to conclude that Plaintiff had been damaged? A. Well, one of the things -- that was one of them. The other thing is that reports were sent out with the inaccurate information, and I was -- and my understanding from the evidence in this case is that his mortgage refinance was affected based on the inaccurate reporting. Q. How was -- how was his mortgage refinance affected by the alleged inaccuracy? A. It was my understanding that the percentage rate was affected. Q. And that's your understanding based off of your conversations with Mr. McCarty? A. Sitting here at this time, yes. Q. I have to ask what did Mr. McCarty tell you that led you to form this opinion? A. It was my understanding from our conversation that the -- Dr. Legel had discussions with his mortgage officer or loan officer, and that's where that information came from. Q. So Plaintiff -- so Plaintiff had a conversation with his mortgage officer. Plaintiff relayed that to Mr. McCarty, and Mr. McCarty relayed that to you, and that is how we reach this conclusion in the report that Plaintiff was damaged? A. Plus the fact that inaccurate reports were sent out based on the inquiries on the file."), 107:2-108:7 ("A. I don't have any mortgage documents in this case. I have no idea what took place with the mortgage other than what I was told, that Dr. Legel indicated that his APR or his interest rate was affected. That's all I can tell you. I don't have any documents to look at. . . . I wasn't involved with that mortgage. . . . I don't know what the terms of the contract. I don't know what's going on with the contract, so I couldn't tell you. . . . I don't have any evidence of the mortgage or the rates or anything. . . . I was told that his interest rate was affected, and that's what I'm basing that on.")).

[8] *See id*. ("[W]hile working at Experian, I recall questioning Experian management on multiple occasions why Experian did not hire more personnel or dispute agents. I recall on one occasion, when working mandatory overtime at Experian, that it was published that Experian's CEO at the time received a bonus of about $1.6 million dollars. I questioned Experian management that if Experian's CEO could be paid a bonus of $1.6 million dollars, why couldn't Experian use that money to hire more personnel to handle the consumer dispute mail volume. Keep in mind that Experian put into place mandatory overtime, not voluntary overtime, and if an employee did not work overtime, the employee faced possible termination from employment with Experian. Regarding the $1.6 million dollar bonus,

Mr. Hollon is not qualified to perform such an analysis. *See* Ex. A at 14, 70 (Hollon Tr. at 43:17-22 (admitting he has no employees), 225:17-226:8 (claiming he was qualified for such an analysis because he "studied Thomas Sowell, Milton Friedman[, and] . . . Adam Smith")). Regardless, it is not reliable methodology to divide Experian's parent company's profits by average wages in California.[9] Nor did Mr. Hollon use a reliable data set. *See id*. at 97:1-2, 224:17-24, 227:3-10, 228:7-12) (admitting that Experian's parent has many other child companies).[10]

In sum, Mr. Hollon is a classic hired gun. *See* Ex. A at 75 (Hollon Tr.) at 233:3-6 ("Q. When you have furnished an expert report involving a data furnisher, have any of those reports found that an adequate investigation occurred? A. As I sit here right now, I do not know."). He does not consider key facts and relies on no legitimate or reproducible analysis to conclude that Experian's procedures were unreasonable. His opinion is bare *ipse dixit* of the sort that courts are bound to ignore. *See Johns*, 2026 WL 914621, at *17 (E.D. Pa. Mar. 31, 2026) (excluding Mr. Hollon's opinion in full because "[t]he opinions he offers lack methodology; cite to no reports, research, or other reliable material; and fail to explain how his experience leads to his conclusions."); *Nelson*, 2024 WL 3219180, at *2–3 (excluding Mr. Hollon's opinion in part because he cited to "no reports, research, or other reliable material . . . [,] [n]or does he explain

---

I was informed by Experian management that it was not planning to hire more personnel, and I was basically informed to mind my own business."); Ex. A at 53–54 (Hollon Tr. at 167:14-168:9) (same).

[9] *See id*. at 224:25-225:15 (admitting that there are many other costs than salary like training, hiring, and insurance); Ex. C at 28–32 (Najera Tr. at 181:22-185:6) (same, and listing managing costs); *id*. at 32 (Najera Tr. at 185:7-14) ("Q. Have you conducted any analysis of whether hiring additional dispute agents would improve accuracy? A. I have not conducted an analysis.")

[10] Mr. Hollon also based his expert opinion on what he thinks opposing counsel inferred in a deposition question. *See* Ex. B at 45–47 (Hollon Report at 44–46) ("During the deposition testimony, Experian's counsel inferred that Experian does not believe consumers. . . . With this in mind, in my experience and knowledge, it is my opinion that the true customer of Experian is not consumers, but the true customer of Experian is data furnishers and/or subscribers of Experian's services/products, such as LJ Ross. . . . Also, in my opinion, Experian's counsel basically confirmed that Experian does not believe consumers with their disputes, but Experian believed the data furnishers who, in my experience and knowledge, pay Experian monies."). That was not his first time doing so. *See* ECF 43 at 18 (Experian's Mot. to Strike at 14), *Delgado v. Experian Info. Sols., Inc.*, No. 4:24-CV-00637-ALM (June 20, 2025).

how his professional background, experience, or training allow him to arrive at [] [] the above conclusions").

## CONCLUSION

For the foregoing reasons, this Court should grant Experian's motion.

Dated:  June 5, 2026                                    Respectfully submitted,


                                                       */s/ Ryan J. Demarest*
                                                       Ryan J. Demarest
                                                       JONES DAY
                                                       TX Bar No. 24138109
                                                       2727 North Harwood Street
                                                       Dallas, TX 75201
                                                       Telephone: 214-220-3939
                                                       Facsimile: 214-969-5100
                                                       Email: rdemarest@jonesday.com

                                                       *Counsel for Defendant*
                                                       *Experian Information Solutions, Inc.*

14

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 5, 2026, I conferred with Plaintiff's counsel, Dennis McCarty, regarding this motion.  Plaintiff is opposed.

*/s/ Ryan J. Demarest*
Ryan J. Demarest

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, I caused the foregoing to be electronically filed with the clerk of court for the U.S. District Court for the Eastern District of Texas using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ryan J. Demarest
Ryan J. Demarest