**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

KENNEDY LEGEL,

      Plaintiff,

    v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al.,

      Defendants.

Case No. 4:25-cv-00224-ALM-AGD

**<u>MEMORANDUM OF LAW IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION</u>**

1

Defendant Experian Information Solutions, Inc. ("EIS") hereby moves this Court for an order, pursuant to sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), compelling all claims against EIS to arbitration, and staying this action as to EIS until the arbitration has been completed

## **INTRODUCTION**

This is an action under the Fair Credit Reporting Act. The plaintiff, Kennedy Legel, alleges that EIS incorrectly reported information appearing in his credit file in violation of the FCRA. Pursuant to Plaintiff's written agreement, EIS elects to adjudicate Plaintiff's claims in arbitration before the American Arbitration Association.

The outcome of this motion should be the same that in *Alexander v. Experian Info. Sols., Inc.*, 2025 WL 1840599 (E.D. Tex. July 3, 2025) (Mazzant, J.), *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194 (4th Cir. 2025), *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343 (11th Cir. 2025), *Newton v. Experian Info. Sols., Inc.*, 2025 WL 2102084 (11th Cir. July 28, 2025), *Meeks v. Experian Info. Sols. Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022), *Borukh v. Experian Info. Sols., Inc.*, 2025 WL 1220042 (E.D.N.Y. Apr. 28, 2025), *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024), *Alvarez v. Experian Info. Sols. Inc.*, 2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023), *Cimillo v. Experian Info. Sols. Inc.*, 2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023), *Levy v. Experian Info. Sols. Inc.*, 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023), *Rubio v. Experian Information Solutions, Inc.*, 2025 WL 2172207 (E.D. Cal. July 31, 2025), *Bryant v. Experian Info. Sols., Inc.*, 2025 WL 313204 (C.D. Cal. Jan. 27, 2025), *Walker v. Experian Info. Sols., Inc.*, 2025 WL 1584680 (E.D. Ky. June 4, 2025), *Aguiar v. Experian Info. Sols., Inc.*, 2025 WL 1531433 (E.D. Cal. May 29, 2025), *Browning v. Experian Info. Sols., Inc.*, 2025 WL 1503973 (S.D. Ind. May 25, 2025), *Lawrence v. Experian Info. Sols., Inc.*, 2025 WL

1431272 (N.D. Ga. May 15, 2025), *Nirandone v. Experian Info. Sols., Inc.*, 2025 WL 1427452 (D. R.I. May 13, 2025), *Penn v. Experian Info. Sols., Inc.*, 2025 WL 1427440 (C.D. Cal. May 6, 2025), *Dicandia v. Experian Info. Sols., Inc.*, 2025 WL 903629 (M.D. Fla. Mar. 25, 2025), *Martin v. Experian Info. Sols. Inc.*, 2025 WL 729274 (M.D. Fla. Mar. 5, 2025), *Wells v. Experian Info. Sols., Inc.*, 2025 WL 475846 (E.D. Va. Feb. 12, 2025), *Goldsberry v. Experian Info. Sols., Inc.*, 2025 WL 699357 (E.D. Tex. Feb. 10, 2025), *Bryant v. Experian Info. Sols., Inc.*, 2025 WL 313204 (C.D. Cal. Jan. 27, 2025), *Hunt v. Experian Info. Sols. Inc.*, 2025 WL 104324 (M.D. Ga. Jan. 15, 2025), *Ellis v. Experian Info. Sols. Inc.*, 2025 WL 79637 (M.D. Fla. Jan. 13, 2025), *Jones v. Experian Info. Sols., Inc.*, 2025 WL 227198 (D. Minn. January 7, 2025), *Humphrey v. Experian Info. Sols., Inc.*, 2024 WL 5247164 (N.D. Ala. Dec. 30, 2024), *Acorin v. Experian Info. Sols., Inc.*, 2024 WL 5011950 (S.D. Cal. Dec. 6, 2024), *Oatway v. Experian Info. Sols., Inc.*, 2024 WL 4879822 (W.D. Wash. Nov. 25, 2024), *Buchanan v. Experian Info. Sols., Inc.*, 2024 WL 4817129 (W.D. Pa. Nov. 18, 2024), *Jenkins v. Experian Info. Sols. Inc.*, 2024 WL 4100258 (E.D. Va. Sept. 6, 2024), *Williams v. Experian Info. Sols., Inc.*, 2024 WL 3876171 (D. Ariz. Aug. 20, 2024), *Driskill v. Experian Info. Sols. Inc.*, 2024 WL 4453292 (N.D. Cal. Oct. 8, 2024), *Rangel v. Experian Info. Sols. Inc.*, 2024 WL 4203361 (E.D. Cal. Sept. 16, 2024), *Clark v. Experian Info. Sols. Inc.*, 2024 WL 4044130 (E.D. Cal. Sept. 4, 2024), *Taylor v. Experian Info. Sols., Inc.*, 2024 WL 5265371 (N.D. Ga. Dec. 31, 2024), *Scribner v. Trans Union LLC*, 2024 WL 3274838 (E.D. Cal. July 2, 2024), *Baker v. Experian Info. Sols. Inc.*, 2024 WL 3082644 (S.D. Ind. June 20, 2024), *George v. Experian Info. Sols. Inc.*, 2024 WL 3013146 (D. Md. June 14, 2024); *Hanson v. Experian Info. Sols. Inc.*, 2024 WL 2974160 (N.D. Ga. June 12, 2024); *Myers v. Experian Info. Sols. Inc.*, 2024 WL 2278398 (D. Ariz. May 20, 2024); *Garcia v. Experian Info. Sols. Inc.*, 2024 WL 1117912

3

(N.D. Cal. Mar. 13, 2024); *Pecoraro v. Experian Info. Sols. Inc.*, 2023 WL 8525114 (S.D. Fla. Dec. 6, 2023), *Ferrell v. Experian Info. Sols. Inc.*, 2024 WL 158103 (C.D. Cal. Jan. 11, 2024), *McLees v. Experian Info. Sols. Inc.*, 2024 WL 135940 (C.D. Cal. Jan. 11, 2024), *Evans v. Experian Info. Sols. Inc.*, 2023 WL 4714078 (C.D. Cal. July 21, 2023), *Knott v. Equifax Info. Servs., LLC*, 2023 WL 6940289 (N.D. Ga. Sept. 7, 2023), *Yates v. Experian Info. Sols. Inc.*, 2023 WL 4747386 (S.D. Tex. July 25, 2023), accepting Report and Recommendations in 2023 WL 5279467 (S.D. Tex. Aug. 16, 2023), *Johnson v. Southwest Recovery Services, Inc.*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023), accepting Report and Recommendations in 2023 WL 1944127 (N.D. Tex. Jan. 24, 2023)), *Roberson v. Experian Information Solutions, Inc.*, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022), *Sauer v. Experian Info. Sols. Inc.*, 2022 WL 2163016 (C.D. Cal. May 12, 2022), *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016 (C.D. Cal. 2022), *DeVries v. Experian Info. Sols. Inc.*, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017), *Saucedo v. Experian Info. Sols. Inc.*, 2023 WL 4708015 (E.D. Cal. July 24, 2023), *Capps v. Experian Info. Sols. Inc.*, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023), *Pipoly v. Experian Info. Sols. Inc.*, 2023 WL 5184188 (N.D. Ga. Aug. 2, 2023), report and recommendation adopted, 2023 WL 5438171 (N.D. Ga. Aug. 21, 2023), *Abukar v. Experian Info. Sols. Inc.*, 2023 WL 3394827 (E.D. Wis. Apr. 11, 2023), *Arciniega v. Experian Info. Sols. Inc.*, 2023 WL 6803084 (D. Ariz. Oct. 12, 2023), *Smith v. Experian Info. Sols. Inc.*, 2023 WL 6057377 (D. N.J. Sept. 14, 2023), *Kinkle v. Experian Info. Sols. Inc.*, 2023 WL 4105804 (S.D. Ind. June 21, 2023), *Solis v. Experian Info. Sols. Inc.*, 2023 WL 4474322 (M.D. Fla. July 11, 2023), *Morgan v. Experian Info. Sols. Inc.*, 2022 WL 681359 (W.D. Wash. Mar. 4, 2022), *Stephens v. Experian Info. Sols. Inc.*, 614 F. Supp. 3d 735 (D. Haw. 2022), *Coulter v Experian Info. Sols.*

*Inc.*, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021), and *Tadic v. Experian Info. Sols. Inc.*, 2019 WL 11499103 (N.D. Ga. Mar. 13, 2019).

Like the plaintiffs in the above-cited cases, Plaintiff is a member of CreditWorks, the name of Experian's credit monitoring service provided by EIS's affiliate, ConsumerInfo.com, Inc. ("CIC") (which does business as Experian Consumer Services ("ECS")). As in those cases, Plaintiff's membership in CreditWorks predates the filing of this lawsuit. There, like here, when Plaintiff enrolled in CreditWorks, he too agreed to the Terms of Use Agreement governing that service. That contract contains an Arbitration Agreement. The Arbitration Agreement defines "ECS" to include its "affiliates," including Defendant "Experian Information Solutions, Inc." During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS, as courts have found. *See, e.g.*, *Cimillo*, 2023 WL 2473403, at *5 n.7 ("[N]umerous courts considering the same or similar agreements involving EIS have found EIS is properly considered an affiliate under the same or similar Arbitration Agreements.").

The Arbitration Agreement provides that Plaintiff and "ECS"—which, again, is defined under the contract to include its affiliate, EIS—agreed to arbitrate "all disputes and claims between us" that arise out of, or relate to, his CreditWorks agreement, including claims under the "Fair Credit Reporting Act."  As the Ninth Circuit and dozens of other courts have ruled, as a party to the Arbitration Agreement contained therein (by virtue of how ECS is defined under the contract), EIS may directly enforce the arbitration provision. *See Meeks*, 2022 WL 17958634, at *2; *Levy*, 2023 WL 2644352, at *6-7 ("[T]he Court agrees with Defendant [EIS] that it is an affiliate of ECS and a party to the contract."); *Cimillo*, 2023 WL 2473403, at *5 (same); *Alvarez*, 2023 WL 2519249, at *6 (same); *Roberson*, 2022 WL 62270, at *2 (same); *Stephens*, 2022 WL 2716177, at

5

*1 (same). At a minimum, however, EIS is a third-party beneficiary of the contract. *Alvarez*, 2023 WL 2519249, at *6 ("Even if [EIS] could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, [EIS] may do so.").

As this Court explained in *Alexander*, the Arbitration Agreement in the CreditWorks Terms of Use delegates "all issues" to an arbitrator—including all questions regarding arbitrability, enforceability and scope. *Alexander*, 2025 WL 1840599, at *9-*10. The contract also expressly incorporates the AAA rules. Thus, if there is any dispute as to the arbitrability of Plaintiff's claims, an arbitrator is to resolve such issues. *See*, *e.g.*, *Levy*, 2023 WL 2644352, at *9 (finding that these provisions express "the clear and unmistakable intent of the Parties to submit arbitrability determinations to the arbitrator"); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020) (characterizing the incorporation of the AAA rules constitutes the parties' clear and unmistakable intent to let an arbitrator determine the scope of arbitrability).

Thus, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, EIS respectfully moves for an order compelling this matter to arbitration, as required under Plaintiff's written agreement, and staying this action until arbitration has been completed.

**STATEMENT OF FACTS**

On March 26, 2024, Plaintiff enrolled in CreditWorks. *See* accompanying Declaration of Dan Smith ("Smith Decl."), ¶ 3. In order to successfully enroll, Plaintiff had to complete a single webform. *Id*. The form required Plaintiff to enter his personal information—*i.e.*, his name, address, phone number, and e-mail address. *Id*. After he entered his personal information, Plaintiff had to click the "Create Your Account" button on the webform in order to enroll. *Id*. Immediately below the boxes to enter his e-mail address and password, was the following disclosure: "By

clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." *Id*. A true and correct representation of the webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 1 to the Smith Declaration. *Id*.

The phrase "Terms of Use Agreement" in the disclosure was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. *Id*., ¶ 4. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. *Id*. Thus, before clicking the "Create Your Account" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." *Id*. When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. *Id*. Immediately below the disclosure was a large purple button that reads: "Create Your Account." *Id*. The webform, the disclosure, and the "Create Your Account" button appeared on a single webpage. *Id*.

After entering his information, Plaintiff clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use Agreement. *Id*., ¶ 5. Plaintiff would not have been able to successfully enroll in CreditWorks unless she clicked that button. *Id*. A true and correct copy of the Terms of Use that Plaintiff agreed to when he enrolled in CreditWorks is attached as Exhibit 2 to the Smith Declaration. *Id*.

The Terms of Use contains an Arbitration Agreement, which requires Plaintiff to litigate, among other things, all claims against "ECS" that "relate to" or "arise out of" his agreement in arbitration. *Id*., ¶ 6. It expressly applies to "claims that may arise after the termination of this

Agreement." *Id*. The Terms of Use defines "ECS" to include its "parent entities, subsidiaries, [and] affiliates . . . ." *Id*. and Ex. 2. During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS. *Id*. By including EIS (an affiliate) within the definition of "ECS," the Terms of Use make EIS a party to the contract, as well as a party to the Arbitration Agreement contained within that contract. *Id*. Moreover, by including EIS within the "Overview and Acceptance of Terms" section, as well as within the definition of ECS in the Arbitration Agreement, the parties intended for EIS to benefit under the contract. *Id*. Additionally, the Arbitration Agreement expressly incorporates the AAA rules. *Id*.[1]

## LEGAL ARGUMENT

## I. THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some

---

[1] On July 16, 2024, Plaintiff cancelled his CreditWorks membership.

set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), cert. denied, 584 U.S. 1031 (2018). This initial question is for the Court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "'apply ordinary state-law principles that govern the formation of contracts.'" *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995)). Under Texas law, a binding contract requires: "'(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (quoting *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002)).

### A.    A Valid Agreement To Arbitrate Exists

As this Court held in *Alexander*, by completing the enrollment process into CreditWorks, consumers are notified that they are agreeing to the Terms of Use, including the Arbitration Agreement contained therein. *Alexander*, 2025 WL 1840599, at *3-*7 ("What matters is if a reasonably prudent person would have known that they were bound by the Terms of Use and, consequently, the Arbitration Provision by clicking the 'Create Your Account' button. As the Court has addressed, one would. Because the parties shared a meeting of the minds, and because the Terms of Use include an arbitration provision, the Court concludes that the parties entered into an arbitration agreement.").

This Court's decision in Alexander does not stand alone. Every court in the United States—including the Fourth, Ninth, and Eleventh Circuits—has concluded that the CreditWorks signup process places users on inquiry notice that they were agreeing to be bound by the Terms of

Use. *Austin*, 148 F.4th 194; *Lamonaco*, 141 F.4th 1343; *Newton*, 2025 WL 2102084; *Meeks*, 2022 WL 17958634; *see also Tadic*, 2019 WL 11499103, at *2 ("The Plaintiff is bound by the Terms and Conditions, including the agreement obligating her to arbitrate on an individual basis, her claims against ConsumerInfo.com, Inc. or its parent and affiliated entities. The Plaintiff's act of clicking on the SUBMIT SECURE ORDER button signified her acceptance of the Terms and Conditions."); *Capps*, 2023 WL 3030990, at *3-*4 ("[T]he court finds that a reasonable user would have seen the notice and would have been able to locate the Terms of Use Agreement via the hyperlink."); *Levy*, 2023 WL 2644352, at *7 ("Plaintiff was provided with reasonably conspicuous notice of the arbitration agreement in the 2019 TOU."); *Cimillo*, 2023 WL 2473403, at *5-7 ("The Court finds that the undisputed facts indicate the webpage design presented, and the language used in the July 2019 TOU, clearly and conspicuously communicated the terms of the Arbitration Agreement to plaintiff, and that plaintiff affirmatively indicated she agreed to them."); *DeVries*, 2017 WL 733096, at *6 ("The text containing the Terms and Conditions hyperlink was located directly above that button and indicated that clicking "Submit Secure Purchase" constituted acceptance of those terms'").

## B.     <u>EIS May Directly Enforce The Arbitration Agreement</u>

EIS's status as a party to the Arbitration Agreement in the CreditWorks Terms of Use is well-established.  This Court's decision in *Alexander* so holds.  *Alexander*, 2025 WL 1840599, at *8 ("Because the language of the Terms of Use and the Arbitration Provision unequivocally include Defendant, Defendant is a party to the Arbitration Provision that may compel arbitration under it.").  Courts throughout the country have so concluded as well.  *See Pipoly*, 2023 WL 5184188, at *3 (finding that EIS "is a party to the Arbitration Agreement" and "therefore, may

enforce [it]"); *Capps*, 2023 WL 3030990, at *5-*6 ("[T]he court concludes that defendant [EIS] was a party to the Arbitration Agreement."); *Levy*, 2023 WL 2644352, at *6-7 ("[T]he Court agrees with Defendant [EIS] that it is an affiliate of ECS and a party to the contract."); *Meeks*, 2022 WL 17958634, at *2 ("Because the district court's denial of the motion to compel arbitration was the result of a legal error and the record is sufficiently developed to allow us to do so, we hold that [EIS] is a party to the arbitration provision."); *Alvarez*, 2023 WL 2519249, at *6 ("There is no reasonable basis to find that Plaintiff has not assented to arbitration with [EIS].").

These holdings comport with the terms of the contract.  The "Overview and Acceptance of Terms" section of the Terms of Use defines ECS to include its affiliates, such as EIS.  Smith Decl., Ex. 2.  The Arbitration Agreement contained within the Terms of Use incorporates the same definition, and includes a straightforward, bilateral promise:  "ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law[.]"  *Id*.  And the contract clearly identifies the promisors and promisees—that is, the parties—with respect to that promise.  *Id*.  (defining "ECS" to include its "parent entities, subsidiaries, [and] affiliates (including, but not limited to, Experian Information Solutions, Inc.). . . ."). EIS is thus expressly swept within the definitions of "ECS" and "us" under the Arbitration Agreement, and thus qualifies as a promisee (and promisor) entitled to enforce the Arbitration Agreement that Plaintiffs entered. *See Levy*, 2023 WL 2644352, at *6-7; *Meeks*, 2022 WL 17958634, at *2; *Alvarez*, 2023 WL 2519249, at *6.

Thus, by disclosing to users they are agreeing to arbitrate with ECS's affiliates, and requiring affirmative action by Plaintiff to assent to those terms, Plaintiff is bound by the Terms of Use Agreement and its obligation that he arbitrate his claims against EIS.

C.    **An Arbitrator Is To Decide The Arbitrability Of Plaintiffs' Claims**

As this Court held in *Alexander*, if there is any question as to whether Plaintiffs' claims fall within the scope of the Arbitration Agreement, that issue also is to be decided by an arbitrator: "All issues are for the arbitrator to decide . . . ." *Alexander*, 2025 WL 1840599, at \*9-\*10; *see also* Smith Decl., Ex. 2.  Where, as here, "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Coulter*, 2021 WL 735726 at \*4 (finding the Terms of Use's delegation clause "constitutes a 'clear and unmistakable' delegation clause under *Henry Schein* and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision").

II.    **THE ACTION MUST BE STAYED PENDING ARBITRATION**

Section 3 of the FAA expressly provides that a district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith v. Spizzirri*, 144 S.Ct. 1173, 1175 (2024) ("The question here is whether § 3 permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration.  It does not.").

## CONCLUSION

For the foregoing reasons, EIS respectfully requests that the Court grant this Motion, enter an order directing Plaintiff to arbitrate his claims against EIS on a non-class basis, and stay this action pending the completion of arbitration.

Dated:  June 12, 2026

Respectfully submitted,

*/s/ Jeffrey Allen Olmsted*
Jeffrey Allen Olmsted
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: 617-570-1000
Email:  jolmsted@goodwinlaw.com

*Attorney for Defendant*
*Experian Information Solutions, Inc.*

13

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, counsel for Defendant conferred with Plaintiff in an attempt to resolve the matter by agreement. The undersigned counsel advised Plaintiff of the basis of the motion, and requested that he inform us whether she intended to oppose the motion. Plaintiff replied and indicated he would oppose this motion.

Dated:  June 12, 2026                                Respectfully submitted,

/s/ Jeffrey Allen Olmsted
Jeffrey Allen Olmsted
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: 617-570-1000
Email:  jolmsted@goodwinlaw.com

*Attorney for Defendant*
*Experian Information Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2026, I electronically filed the foregoing Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration and Memorandum of Law with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

/s/ *Jeffrey Allen Olmsted*
Jeffrey Allen Olmsted
