IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

Kennedy Legel                                          Civil Action No. 4:25-cv-224

              **Plaintiff**

v.

Experian Information Solutions, Inc., et al

              **Defendants**

**PLAINTIFF'S RESPONSE BRIEF TO DEFENDANT EXPERIAN
INFORMATION SOLUTIONS' MOTION TO COMPEL ARBITRATION
AND TO STAY DISCOVERY**

COMES NOW, Plaintiff Kennedy Legel (hereinafter Plaintiff) files his brief in support for his response to Defendant Experian Information Solutions' (hereinafter "Experian or Defendant") Motion to Compel Arbitration and to stay discovery.

## I.  NATURE OF THE CASE

This is a Fair Credit Reporting Act case, pursuant to 15 USC §1681. Plaintiff's live complaint alleges that Experian violated multiple sections of the 15 USC §1681. Plaintiff's live complaint alleged that he is a victim of Identity Theft and that he did not make the transactions that Experian is reporting on his credit file/reports. Plaintiff's original complaint was filed on March 5, 2025.  Discovery ended on May 1, 2026.  Dispositive Motion deadline is June 26, 2026. Defendant filed their motion to compel arbitration on June 12, 2026, approximately 15 months after the case was filed.

## II. BRIEF: ARGUMENTS AND AUTHORITIES

### A.  Fifth Circuit: Experian aggressively litigated and waived any right to arbitration

Experian's motion to compel arbitration at this late stage of litigation is overly egregious.

1

The Fifth Circuit has ruled that a party waives their right to arbitration if they substantially invoke the judicial process.  And a party invokes the judicial process if they litigated the claim that the party now proposes to arbitrate.  *See Barnett v. Am. Express Nat'l Bank*, No. 24-60391, 2025 LX 302405, at *3 (5th Cir. July 29, 2025)(A party can waive its right to arbitration by substantially invoking the judicial process.  *Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, 141 F.4th 671, 676 (5th Cir. 2025). *Forby* reiterated that "[f]or waiver purposes, a party only invokes the judicial process to the extent it litigates *a specific claim* it subsequently seeks to arbitrate." 13 F.4th at 465. (emphasis in original) (quotation omitted). That rule is nothing new. In fact, this court has made "repeated statements" saying so—both before and after *Forby*. *Id.* at 466. *See, e.g.*, *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328-29 (5th Cir. 1999) ("[I]n order to invoke the judicial process, a party must have litigated *the claim that the party now proposes to arbitrate*." (emphasis added)); *Garcia*, 141 F.4th at 676 (emphasizing that substantial invocation remains the touchstone for waiver).

Experian has aggressively litigated this case with a scorched earth litigation strategy.

1.    Experian noticed and conducted seven (7) marathon depositions, including three (3) third party depositions.

a.  Experian noticed and conducted an in-person deposition on Plaintiff, Kennedy Legel on October 7, 2025.  The transcript states that Experian used six hours and sixteen minutes and the other defendant LJ Ross only used 8 minutes.  The transcript states that the deposition went from 10:45 am to 6:33 pm.

b.  Experian noticed and conducted an in-person deposition on Plaintiff's

2

wife, Paraskevi Legel on November 13, 2025. The transcript states that Experian used five hours and nineteen minutes and LJ Ross used 7 minutes. The transcript states that the deposition went from 10:47 am to 6:04 pm.

      c.   Experian noticed and conducted an in-person deposition on Plaintiff's Expert, Douglas Hollon on January 22, 2026.  The transcript states that Experian used five hours and fifty-seven minutes, LJ Ross used fifty minutes and Plaintiff used twenty-one.  The transcript states that the deposition when from 10:53 am to 8:01 pm.

      d.   Experian noticed and conducted an in-person deposition in Dallas on Plaintiff's Expert, Dr. George Santos, MD, PA, DLFAPA on January 30, 2026.  It is important to note that Plaintiff's counsel asked Defendant's counsel if they could do it by zoom to save on travel time and expenses since Dr. Santos lives and works in Houston.  Experian's response was that they wanted it in-person in Dallas.  The transcript states that Experian used three hours and twenty-nine minutes.  The transcript states that the deposition when from 9:45 am to 5:02 pm.

      e.   Experian noticed and conducted an in-person third party deposition on Murdock Richard on February 6, 2026.  The transcript shows that the deposition went from 10:42 am to 5:04 pm.  The transcript does not state the amount of time each party used, but Experian was the only party that asked questions and used time, Plaintiff did not feel the need to cross-examine.

      f.   Experian noticed and conducted an in-person third party deposition on Edwin Johansson on April 8, 2026.  The transcript states that Experian used four hours and forty-five minutes. The transcript states that the deposition went from 10:11 am to 3:27 pm.

      g.   Experian noticed and conducted an in-person third party deposition on

Rosalind Johansson on April 22, 2026.  The transcript states that the deposition went from 1:33 pm to 6:35 pm.  The transcript does not state the amount of time each party used, but Experian was the only party that asked questions and used time.

2.      Experian sent a full set of written discovery.  Experian sent two requests for admissions, a request for production and a request for interrogatories.

3.      Experian also issued four subpoenas to third parties.  One to take Ms. Johansson's deposition, one for Ms. Johansson to produced documents, one to take Mr. Johansson's deposition, and one for Mr. Johansson to produce documents.  Some of the documents that Experian requested in their subpoena to Mr. Johansson asked for privileged information.  After Plaintiff's counsel filed a motion for protective order, Experian's counsel asked for an oral hearing, which was on heard in Sherman on February 5, 2026.

4.      Experian designated an expert, Mary Methvin, to rebut Plaintiff's expert, Douglas Hollon.

5.      In addition, Plaintiff noticed and deposed Experian's 30(b)(6), Experian's expert, Experian's mail processing supervisor, and the Experian mail room employee that signed for the package. Experian never objected to any of the noticed depositions.

6.      On June 6, 2026, Experian filed a motion to strike both of Plaintiff's experts, Douglas Hollon and Dr. George Santos.

7.      Plaintiff sent over a request for production, Experian responded without objection. Plaintiff and Experian even had a marathon met and conferred multiple times, one that lasted around three hours.

The Northern District of Texas ruled that arbitration was waived with very similar facts as in this case.  *See Wynne v. Nexion Health at Flower Mound, Inc.*, Civil Action No. 3:13-CV-

2605-N, 2014 U.S. Dist. LEXIS 186729, at *2-3 (N.D. Tex. June 4, 2014)(Nexion's motion to compel arbitration comes late in the game. Nexion filed its motion on April 29, 2014, only three months before the scheduled trial, *see* Scheduling Order, Aug, 16, 2013 [10], and nine months after filing its answer, *see* Def.'s Answer [4]. The parties have conducted discovery, including requests for production, interrogatories, initial disclosures, designation of experts, and two depositions. Pl.'s Resp. 8 [22]. More significantly, Nexion has used the litigation process in an attempt to dispose of the case by moving to strike two expert reports necessary to Plaintiff Tracie L. Wynne's negligence claim. *See* Def.'s Objections to Expert Reports [12, 13]. Nexion has thus demonstrated "a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Republic Ins.*, 383 F.3d at 344-45 (citations omitted). Nexion's actions have prejudiced Wynne, who has incurred significant expenses in litigating the case in this forum and would have to start over if arbitration were ordered. The Court holds that Nexion, by substantially invoking the judicial process to the detriment of Wynne, has waived its right to arbitration. The Court therefore denies Nexion's motion [*3] to compel arbitration.).

Defendant's reliance on *Alexander v. Experian Info. Sols., Inc.*, 2025 WL 1840599 (E.D. Tex. July 3, 2025), is misplaced because it is not analogous to the facts of this case. In *Alexander,* Experian filed an answer on March 8, 2024, and by August 7, 2024, they filed their motion to compel arbitration, early in the case. Experian's motion or the ruling did not address if Experian litigated the case prior to filing their motion, but even if they did, it could not have been much. That is contrary to the facts of this case, not only did discovery end on May 1, 2026, but Experian has aggressively litigated this case from the beginning.

5

Experian also cited dozens of out of circuit cases without any explanation of the rulings, but since the Fifth Circuit ruled that a party waives their arbitration rights if they substantially invoke litigation, which Experian did in this case, their rulings are moot and of no moment.

**B. Because of the enrollment and cancellation dates, none of the facts, information, allegations, claims, or violations alleged are in any way related to or arose from Creditworks**

Experian's motion fails because Plaintiff can prove that none of the facts, information, allegations, claims, or violations that Plaintiff alleged against Experian arose from or related to the arbitration agreement with Creditworks.  Plaintiff discovered the fraudulent reporting prior to his enrollment and the facts, allegations and violations alleged in his amended complaint all occurred after he cancelled the enrollment. Plaintiff's claims and allegations occurred outside of any enrollment period and have nothing to do with Creditworks.

Experian's declarant Dan Smith testified that Plaintiff enrolled on March 26, 2024, and cancelled it on July 16, 2024.  Mr. Smith further testified that, "The Terms of Use contains an Arbitration Agreement, which requires Plaintiff to litigate, among other things, all claims against "ECS" that "relate to" or "arise out of" his agreement in arbitration on a non-class basis.".  The actual agreement goes a bit further, "ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration."

Plaintiff first learned about the identity theft and the fraudulent information that was reported on his credit reports when he first attempted to refinance his home in February 2024. His loan officer pulled a tri-merge credit report on February 20, 2024.  A tri-merge credit report pulls the credit information/reports directly from Experian, Trans Union, and Equifax's and

combines them into one usable credit report.  All of the information on the tri-merge came from and belongs to each of the bureaus.  This occurred prior to the enrollment date and had nothing to do with Creditworks.

When Plaintiff cancelled his membership on July 16, 2024, it also cancelled the arbitration agreement tied to it.  Since Plaintiff cancelled the membership and did not use any of Creditworks' services after the cancellation, then common sense tells us that none of facts, information, allegations, violations or claims that came after the cancellation could be related to the membership/agreement.

In this case, Experian received Plaintiff's first dispute on or around August 9, 2024.  Experian received the first ACDV back from LJ Ross on August 28, 2024, instructing them to continue reporting the account, which they did.  The date of the first violation was on August 28, 2024, Plaintiff did not discover the violation until a short time after, all after Plaintiff cancelled his membership.  Experian received Plaintiff's second dispute on September 14, 2024, well after Plaintiff cancelled his membership.  And Experian received Plaintiff's third dispute on December 21, 2024, which they shredded and did not process or investigate it at all.

Since Plaintiff cancelled his membership/agreement before Experian even received the first dispute/violation, not to mention before the second and third disputes/violations, proving that none of the facts, information, allegations, claims, or violations were related in any way to Creditworks.

Experian's did not argue the specific claims or information was related to arose out of the Creditworks agreement.  The only specific fact that Experian argued was that Plaintiff enrolled on March 26, 2024, and cancelled it on July 16, 2024.  Experian's entire argument that Plaintiff should be compelled to arbitration just because he enrolled in Creditworks for less than four

7

months, without ever arguing what services or information that he received from them is conclusory at best and should not be considered.  Experian has to prove that Plaintiff's claims "relate to" or "arise out of" his agreement with Creditworks, the problem for Experian is that they never argue that Plaintiff received any specific services, or what claims or information that relates to or arose from the agreement. Experian's only argument is that Plaintiff was enrolled for a period of time, and just because of that, the case should be arbitrated, regardless of what services or information that he may or may not have received.  In reality, the "claims" have to arise from the agreement, which Experian never argued or proved. Just because Plaintiff filed an FCRA case against Experian, that does not automatically mean that Plaintiff's current claims have anything to do with a three and half month membership with Creditworks.

**C. Federal Courts in Texas have ruled that unilateral Arbitration Agreements are unenforceable**

The arbitration agreement that Experian filed makes it clear that they are the only party allowed to amend the terms.

### AMENDMENTS

This Agreement may be updated from time to time. You should check this Website regularly for updates to this Agreement. Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement. Modifications take effect as soon as they are posted to this Website (or any of the Websites, to the extent applicable to you), delivered to you, or reasonably made available to you in writing by ECS. However, no amendment will retroactively modify the parties' agreed-to dispute resolution provisions of this Agreement for then-pending disputes, unless the parties expressly agree otherwise in writing.

In fact, Experian states that they can unilaterally amend the agreement from time to time and it will update to the new agreement each time a consumer accesses or uses the website.  The only time they will not retroactively modify it is if there a current and pending dispute ongoing. Because Experian can and will unilaterally amend their agreement at will, Federal Courts in Texas have ruled that will render the agreement illusory and unenforceable. *See Kunkel v. D.R. Horton -- Tex., Ltd.*, Civil Action No. 3: 05-CV-0381-D, 2005 U.S. Dist. LEXIS 15860, at *10-

11 (N.D. Tex. Aug. 3, 2005)(A number of federal district courts have followed the dicta in *Davidson* and held that the unilateral ability to alter, amend, or terminate an arbitration agreement renders that agreement illusory and unenforceable. *See Kai v. Asia Source, Inc.*, 2004 U.S. Dist. LEXIS 22598, 2004 WL 2545006, at *1 (N.D. Tex. Nov. 4, 2004) (Lynn, J.); *Nasir*, 2004 U.S. Dist. LEXIS 20005, 2004 WL 2236658, at *2; *Harmon v. Hartman Mgmt., L.P.*, 2004 U.S. Dist. LEXIS 29123, 2004 WL 1936211, at *3 (S.D. Tex. Aug. 24, 2004). In *Nasir* Judge Sanders analyzed *Davidson* and concluded that, "in addressing the issue, the Texas Supreme Court would rule that where an employer retains the unilateral, unrestricted right to modify or terminate its arbitration policy, any agreement to arbitrate under such terms is illusory." *Nasir*, 2004 U.S. Dist. LEXIS 20005, 2004 WL 2236658, at *2. Furthermore, at least one Texas appellate court has cited Davidson for the rule that, "if an employer retains [*11]  the unilateral right to modify an arbitration plan, the consideration for the arbitration agreement is illusory." In re  *Dillard Dep't Stores, Inc*, ___ S.W.3d __, 2005 Tex. App. LEXIS 1669, 2005 WL 552422, at *3 (Tex. App. 2005, pet. filed); *see also In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex. App. 2003, no pet.) (holding before Davidson that employer's right unilaterally to amend arbitration agreement made consideration for agreement illusory);  *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388-89 (Tex. App. 1998, pet. dism'd w.o.j.) (holding before Davidson that employer's right unilaterally to amend or rescind arbitration agreement made agreement illusory). This court follows the weight of authority and the *Davidson* dicta and concludes that the Texas Supreme Court would hold that, where an employer retains the unilateral, unrestricted right to modify or terminate an arbitration agreement, the agreement is illusory.); *see also Kai v. Asia Source, Inc.*, Civil Action No. 3:04-CV-1188-M, 2004 U.S. Dist. LEXIS 22598, at *1 (N.D. Tex. Nov. 4, 2004)The court held that, under Texas law, the arbitration agreement was based on

9

illusory consideration because the manual gave the employer the right to modify any of its personnel policies, including the arbitration policy, at any time without prior notice. Since the employer was permitted unilaterally to cancel its agreement to arbitrate, whereas the employee did not have the same right, the provision was unenforceable under Texas law.).

### D.  Fifth Circuit: Arbitration is an issue for the Court to decide

The Fifth Circuit has ruled, with guidance from the Supreme Court, that a decision to determine both the existence and enforceability of an arbitration agreement is up to the courts, not an arbitrator.  *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398-99 (5th Cir. 2022)(To that end, deciding enforceability between the parties and an arbitration agreement's existence are two sides of the same coin. We said as much in *Sherer v.  [\*399]  Green Tree Servicing LLC*. Under "the first step in determining whether a valid agreement to arbitrate exists," we look first to "the 'terms of the agreement,'" which "dictate '[w]ho is actually bound by an arbitration agreement.'" Then, "[i]f that fails," we "look to theories such as equitable estoppel to determine whether a nonsignatory may compel arbitration." Under both the Supreme Court's and our caselaw, then, Newman has the better view. It is up to us—not an arbitrator— to decide whether Plains can enforce the Newman—Cypress arbitration agreement.).

### E. This case should not be stayed

Experian aggressively litigated this case and therefore waived their right to appeal. Furthermore, Plaintiff proved that none of the facts, allegations, information, or violations were related or arose out the five (5) month enrollment period.

Any stay in discovery would just unnecessarily and needlessly delay the progress of litigation of this case.

### F.  This response is timely.

Defendant filed their motion to arbitrate at 5:13pm (central) on June 5, 2026.  *(See*

Dkt. No.119). Due to filing their motion after 5:00pm (Local Rule CV-5(a)(3)(C) and Friday,

June 26, 2026, and the Eastern District of Texas' ECF was down for maintenance from 6:30

Friday June 26, 2026 to Monday, June 29, 2026, Plaintiff's response is timely. Plaintiff can

provide a screen shot of the ECF being down if needed.

**PRAYER**

  **WHEREFORE PREMISES CONSIDERED,** Plaintiff prays for the reasons stated above as

well as all of the pleadings and information on the record that the Court deny Experian's motion

to compel arbitration and deny their request for a stay, and for such other relief, whether at law or

in equity, to which Plaintiff is so entitled.

Dated:  June 29, 2026

Respectfully submitted,

/s/Dennis McCarty
Dennis McCarty
McCarty Law Firm
ATTORNEY FOR PLAINTIFF
Mississippi Bar No. 102733
Supreme Court of the United States Bar No. 302174
Federal Bar No. 993800
4313 Glenwood
Granbury, Texas 76049
Telephone: 866-969-3989
dennismccartylaw@gmail.com
.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of June, 2029, I electronically filed the foregoing with the
Clerk of Court using the CM/ECF system which will send notification of such filing to the
attorneys on record:

 Date Signed this the 29th day of June, 2029

Respectfully submitted,

/s/Dennis McCarty_____

11

Dennis McCarty
Attorney for Plaintiff