**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

KENNEDY LEGEL,

               Plaintiff,

    v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al.,

               Defendants.

Case No. 4:25-cv-00224-ALM-AGD

**REPLY IN SUPPORT OF EXPERIAN'S MOTION TO STRIKE**
**OR EXCLUDE EXPERT TESTIMONY OF DR. GEORGE SANTOS**

Plaintiff's Response does not dispute a single fact material to Experian's Motion. It is undisputed that the LJ Ross account was removed from Plaintiff's Experian file no later than May 14, 2025—nearly five months before Dr. Santos's evaluation. It is undisputed that Plaintiff knew it, testifying three days after that evaluation that his Experian report was accurate. It is undisputed that Dr. Santos did not know it, and that his report attributes Plaintiff's alleged symptoms, "to a degree of reasonable medical certainty," to "ongoing stress from *unresolved* erroneous credit reports." Ex. 4 at 4. And it is undisputed that Dr. Santos reviewed no documents, verified nothing, and conceded at deposition that he cannot connect Experian's conduct to any specific harm.

Unable to contest the record, the Response substitutes three attempts for argument. *First*, it recites a "weight, not admissibility" refrain drawn entirely from authorities that predate the December 1, 2023 amendment to Rule 702—the amendment adopted to correct precisely that misstatement of the law. *Second*, it rests on a declaration Dr. Santos signed on June 24, 2026— nearly five months after his deposition and nineteen days after this Motion was filed—that

- 1 -

discloses, for the first time, a causation theory found nowhere in his Rule 26 report, and that adds a new false assertion of its own: that "there were no relevant medical records to review." The declaration should be stricken as untimely. Considered on its merits, it only confirms the opinion's complete unreliability. *Third*, the Response refutes arguments Experian never made—defending Dr. Santos's credentials and the clinical interview in the abstract—while ignoring Experian's actual challenge that Dr. Santos uncritically adopted demonstrably false statements as the foundation of an opinion cloaked in medical certainty. And the Response leaves the Motion's remaining grounds—the false representations Dr. Santos credited, the Mounjaro confounder, Plaintiff's contrary statements to Dr. Norman, and Rule 403—wholly unanswered. None of it satisfies Plaintiff's burden under amended Rule 702. The Court should strike or disregard the June 24 declaration and exclude Dr. Santos's other opinions and testimony in their entirety.

**A.      The Amended Rule 702 Forecloses Plaintiff's "Weight, Not Admissibility" Refrain.**

Every authority Plaintiff cites for his refrain predates the December 1, 2023 amendment to Rule 702.[1] The Advisory Committee amended the Rule because "many courts" had incorrectly held "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." Fed. R. Evid. 702 advisory

---

[1] *See Patton v. Metro. Lloyds Ins. Co. of Tex.*, No. 5:21-CV-074-H, 2022 U.S. Dist. LEXIS 132082 (N.D. Tex. Feb. 14, 2022); *Veroblue Farms USA Inc. v. Wulf*, No. 3:19-cv-764-X, 2023 U.S. Dist. LEXIS 9897 (N.D. Tex. Jan. 20, 2023); *Colon v. Kinnel*, No. 5:21-cv-03337-JMG, 2023 U.S. Dist. LEXIS 27115 (E.D. Pa. Feb. 17, 2023); *Hamilton v. McLemore*, No. 2:19-CV-47-KS-MTP, 2021 U.S. Dist. LEXIS 82911 (S.D. Miss. Mar. 18, 2021); *Jones v. Halliburton Co.*, No. 4:07-cv-2719, 2011 U.S. Dist. LEXIS 51841 (S.D. Tex. May 13, 2011); *Jelú-Iravedra v. Municipality of Guaynabo*, No. 16-1585(RAM), 2019 U.S. Dist. LEXIS 177440 (D.P.R. Oct. 10, 2019); *TitleMax of Tex., Inc. v. City of Dall.*, No. 3:21-cv-1040-S-BN, 2023 U.S. Dist. LEXIS 126700 (N.D. Tex. July 24, 2023); *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038 (N.D. Tex. 2022); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987); *Hoerchler v. Equifax Info. Servs., LLC*, 568 F. Supp. 3d 931 (N.D. Ill. 2021).

committee's note to 2023 amendment. Plaintiff's refrain restates the very error the amendment abrogated. His only post-amendment authority from this District proves the point: in *Garcia Delgado v. Experian Information Solutions, Inc.*, No. 4:24-cv-637, 2026 WL 674189, at \*3–4 (E.D. Tex. Mar. 10, 2026) (Mazzant, J.), the court excluded opinions "regarding Plaintiff's alleged economic damages and their cause"—the same causation and damages testimony Dr. Santos purports to offer here. The "weight" passage Plaintiff quotes addressed a different opinion regarding credit reporting industry procedures testimony in light of an expert's claimed years of industry-specific experience. *Id.* Dr. Santos's proffer is the excluded category under *Delgado*.

**B.**     **The June 24 Declaration Is an Untimely New Opinion and a Concession.**

Confronted with the false predicate raised by Experian in its Motion, Plaintiff does not actually defend Dr. Santos's report. He replaces it. Attached to the Response is a new declaration—signed nearly five months after Dr. Santos's deposition and nineteen days after this Motion. It discloses for the first time a theory that resolution "does not 'flip a switch'" and that stress may persist after correction. Resp. Ex. A ¶ 10. But the report says the opposite, attributing symptoms to "ongoing stress from unresolved erroneous credit reports" and to adverse reports "which still exist." Ex. 4 at 3–4. Rule 26(a)(2)(B)(i) required "a complete statement of all opinions" and their bases. A new causation theory first disclosed in opposition to a motion to strike is not a Rule 26(e) supplement but an untimely opinion subject to exclusion under Rule 37(c)(1). *See Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). The Court should strike or disregard it.

Even if considered, the declaration confirms the problem. It concedes Dr. Santos wrote his report believing the Experian reporting remained uncorrected—a methodology blind to its own false premise cannot reliably measure the harm that fact allegedly caused. And the new residual stress theory requires the very analysis Dr. Santos admitted he cannot perform in the first place: apportioning symptoms across a timeline he did not know existed, and between Experian and the

identity thief, the furnisher, the other bureaus, and Plaintiff's other stressors. Asked whether Experian's reporting caused Plaintiff's higher loan rate, he answered: "I have no idea how to answer that question." Ex. 5 at 144:8–20. His report promised that "[a]s any additional information is provided, I may amend my opinion." Ex. 4 at 4. The information arrived; he amended nothing.

**C.      The False Predicate Is Foundational, and the Remaining Grounds Are Conceded.**

Plaintiff shrugs that "a few facts are different." Resp. at 8. But that unresolved status is the premise of every layer of the report—the engagement (entries "which persist despite efforts to resolve"), the analysis (reports "which still exist"), and the ultimate opinion (Plaintiff "continues to have this erroneous report"). Ex. 4 at 1, 3–4. Once the false premise is removed, the opinion rests on nothing more than Dr. Santos's say-so. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (opinion "based on a fictitious set of facts is just as unreliable as evidence based upon no research at all").

Plaintiff's lead authority illustrates the difference. In *Hamilton*, the court declined to exclude an expert opinion because "it was never asked if the true facts, as Defendants see them, would change [the expert's] opinions." 2021 U.S. Dist. LEXIS 82911, at *8. Here, Dr. Santos *was* asked. Confronted with the true facts at his deposition, he conceded that the "adjective 'diligent' may be [his] interpretation," that he did not have "enough details to say that at this point," and that he did not know when the account was corrected. Ex. 5 at 109:10–25, 121:9–122:1. Thus, *Hamilton*'s own rationale supports exclusion here. So does Dr. Santos's fresh assertion in his declaration that "there were no relevant medical records to review." Resp. Ex. A ¶ 6. That, too, is false—and could not have been verified without looking. Plaintiff had a treating physician managing the diabetes diagnosed two weeks before the credit-report discovery and prescribing the appetite-suppressing medication to which Dr. Santos attributed part of the weight loss he ascribed to stress. Ex. 4 at App'x A.4, A.7. Records bearing directly on the physical symptoms at issue

existed. Dr. Santos just never asked for them.

The remainder of the Response addresses arguments Experian never made while leaving the Motion's principal points unanswered. Experian never challenged Dr. Santos's qualifications, and it does not contend a clinical interview is *per se* unreliable; the defect is sole reliance on an unverified litigation narrative that proved false on material points—the ground on which *Viterbo* excluded testimony, 826 F.2d at 424, a holding the Response quotes around. Plaintiff's own *Doe C.L.F.* expert ruled out alternative stressors after a five-hour evaluation. *Doe C.L.F. v. G6 Hosp., LLC*, No. 1:23-CV-00303-MJT-CLS, 2025 LX 446465, at *16–18 (E.D. Tex. Aug. 20, 2025). By comparison, Dr. Santos ruled out nothing in two hours and conceded "you almost never can tie anything back to just one stressor." Ex. 5 at 153:15–25. The Response's one satisfaction discussion is a *non sequitur*, in any event—Experian seeks no offset; it identified a causation gap that Plaintiff concedes, acknowledging Dr. Santos "never expected to be a credit reporting expert," Resp. at 7, just as Dr. Santos admitted he is not "an expert on how credit reports affect the terms of a loan or financing." Ex. 5 at 208:5–7. An expert who by his own proponent's account cannot address the mechanism connecting Experian's reporting to Plaintiff's claimed harm cannot supply "a reliable causative link." *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 518 (E.D. La. 2002). And the Response says nothing about the false "diligent efforts" and "$200,000–$300,000" representations Dr. Santos credited, the Mounjaro confounder, Plaintiff's contrary statements to Dr. Norman, or the contradiction between the causation opinion and Dr. Santos's own examination findings of "good attention and concentration," E x. 4 at App'x A.10–11, or Rule 403 and the "Objective psychometric testing" scores Dr. Santos himself disavows. Ex. 4 at App'x A.11; Ex. 5 at 59:11–25. The Response never addresses any of those issues. They therefore stand unrebutted. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

Respectfully submitted this 6th day of July, 2026.

/s/ Grant Edward Lavelle Schnell
Grant Edward Lavelle Schnell, Esq.
(Admitted *Pro Hac Vice*)
1900 N Street, NW
Washington, DC 20036
Phone: (202) 346-4000
Email: gschnell@goodwinlaw.com

Jeffrey Allen Olmsted
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Phone: 617-570-1000
Email: jolmsted@goodwinlaw.com

*Counsel for Defendant*
*Experian Information Solutions, Inc.*

- 6 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

*/s/ Grant Edward Lavelle Schnell*
Grant Edward Lavelle Schnell, Esq.